IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL JAMES CONLEY, | ) |
| Plaintiff, | ) |
| vs. | ) Civil Action No. 20-137-E |
| ANDREW SAUL,<br>*Commissioner of the Social Security Administration*, | ) |
| Defendant. | ) |

ORDER

AND NOW, this 3rd day of August, 2021, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 17), filed in the above-captioned matter on March 4, 2021,

IT IS HEREBY ORDERED that the Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 14), filed in the above-captioned matter on February 1, 2021,

IT IS HEREBY ORDERED that the Motion is GRANTED IN PART and DENIED IN PART. The Court grants Plaintiff's Motion to the extent Plaintiff seeks remand for further proceedings before the Commissioner of Social Security ("Commissioner"), as set forth below, and denies the Motion in all other respects. Accordingly, this matter is hereby remanded to the Commissioner for further evaluation under sentence four of 42 U.S.C. § 405(g).

I.   **Background**

Michael James Conley ("Plaintiff") protectively filed an application for disability insurance benefits pursuant to Title II of the Social Security Act ("Act"), 42 U.S.C. § 401 *et seq.*, on June 26, 2018. (R. 15). After Plaintiff's application was initially denied, Plaintiff sought a hearing before an Administrative Law Judge ("ALJ"). (R. 15). The ALJ found Plaintiff not

disabled in a decision dated April 30, 2019 (R. 22) and that decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (R. 1).[1] Plaintiff timely filed an action in this Court for review of the decision (Doc. No. 1) and each party has moved the Court for summary judgment.

## II.     Standard of Review

This Court will not disturb the Commissioner's final decision where there is no error of law or lack of substantial evidence supporting the decision. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Substantial evidence is only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citing *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The Court may not set aside a decision that is supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Though afforded considerable deference, the Commissioner's final decision "should be accompanied by a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Such an explanation includes "subsidiary findings to support the ultimate findings" so as to facilitate reviewing courts' understanding of "the basis for the decision." *Id.* at 705 (citing *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974); *Hargenrader v. Califano*, 575 F.2d 434, 438 (3d Cir. 1978)). To that end the ALJ must identify evidence that supports the decision and acknowledge rejected evidence. *Id.* Without the latter, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.*

## III.    The ALJ's Decision

---

[1]     20 C.F.R. § 404.981.

The ALJ found Plaintiff was not disabled after going through the five-step sequential evaluation for disability benefits claims. (R. 16—22).[2] At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity between the alleged onset date—November 20, 2011—and Plaintiff's date last insured—September 30, 2014. (R. 17). At step two, the ALJ found Plaintiff suffered from seven severe, medically determinable impairments: "obesity, right shoulder tendonitis, sleep apnea, lumbar degenerative disc disease, depression, anxiety, and hypertension." (R. 17). He compared Plaintiff's impairments and combination thereof against the impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1. (R. 18). He specifically considered whether Plaintiff's impairments met or equaled listings §§ 1.02, 1.04, 12.04, and 12.06. (R. 18—19). The ALJ found Plaintiff's impairments did not demonstrate the criteria for those listings and proceeded to formulate Plaintiff's residual functional capacity ("RFC") to facilitate his consideration of Plaintiff's work prospects. (R. 19).

For the RFC, the ALJ determined that Plaintiff could "perform light work" if he only had to stoop "occasional[ly]" and could avoid all "overhead reaching with the right upper extremity." (R. 19). He further limited Plaintiff to "work consisting of only simple tasks." (R. 19). The ALJ explained that this RFC determination was predicated upon his consideration of Plaintiff's

---

[2]  *See Knepp*, 204 F.3d at 83 (citing 20 C.F.R. § 404.1520). The five-step evaluation starts with a determination of "whether the claimant currently is engaging in substantial gainful activity." *Id.* Next, the Commissioner considers at step two whether the claimant suffers from a "severe impairment." *Id.* at 84. At step three, the claimant's impairment(s) are compared to a list of presumptively disabling impairments. *Id.* (citing *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987)). If the claimant is found to suffer from a listed impairment or its equivalent, the inquiry ends in the claimant's favor. *Id.* If the inquiry does not end in the claimant's favor at step three, the Commissioner must determine at steps four and five whether the claimant "retains the ability to perform either his [or her] former work or some less demanding employment." *Id.* (citing *Sullivan v. Zebley*, 493 U.S. 521, 535 (1990)).

testimony and medical records, including treatment histories, physical findings, medical imaging, medications, and mental health findings. (R. 19—20).

Reviewing Plaintiff's testimony, the ALJ noted that Plaintiff's back and shoulder pain affected him the most, positional changes exacerbated his back pain, his impairments stopped Plaintiff from participating in activities like fishing and gardening, and his pain adversely impacted his sleep leading to tiredness and poor concentration. (R. 19). The ALJ credited Plaintiff's testimony to an extent, but found it was not totally consistent with the other evidence in the record. He mentioned that Plaintiff benefited from epidural steroid injections and pain medication for his back pain. (R. 20). He further considered that imaging did not "correlate with the radicular pain syndrome that [Plaintiff] was reporting." (R. 20). He considered Plaintiff's treatment with a pain management specialist—Dr. Rai—from 2011 to 2014. (R. 20). He also reviewed Plaintiff's treatment with the Veterans Administration ("VA"), particularly with regard to Plaintiff's right shoulder impairment and 2014 shoulder surgery. (R. 20). The ALJ further noted Plaintiff's course of medication for hypertension, use of a CPAP for sleep apnea, and obesity. (R. 20). For mental health records, the ALJ considered Plaintiff's history with a VA therapist and his antidepressant prescription. (R. 20).

Considering this evidence, the ALJ determined that Plaintiff could not return to his work as a teacher. (R. 21). However, with the help of a vocational expert ("VE"), the ALJ decided that Plaintiff could adjust to work as a "routing clerk," "ticket seller," or "ticket taker." (R. 22). Thus, the ALJ found Plaintiff was not disabled. (R. 22). The ALJ acknowledged that this finding was based on Plaintiff's capacity for light work and that, if he had found Plaintiff to be

limited to sedentary work, he would have found Plaintiff disabled by reference to the "grids." (R. 67).[3]

IV.   **Legal Analysis**

Plaintiff argues that this Court cannot find the ALJ's decision is supported by substantial evidence where the ALJ mischaracterized or failed to address significant, probative evidence in the record.  For the following reasons, the Court finds the ALJ did fail to address parts of the record that were probative of Plaintiff's functional limitations.  The Court will order remand for further consideration of that evidence.

An ALJ's RFC determination must be based on his consideration of the entire record.  20 C.F.R. § 404.1545(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record.").  The ALJ's consideration of the record must be reflected in his decision, that is, the ALJ must provide a full and clear explanation of his decision with reference both to evidence that supports it and evidence he rejected.  *Cotter*, 642 F.2d at 704–05.  While it would be unreasonable to expect ALJs to "make reference to every relevant treatment note," reviewing courts have a "particularly acute need" of an ALJ's explanation of how he considered evidence where there is "conflicting probative evidence in the record." *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001).

When an ALJ fails to address relevant medical evidence that appears to undermine his findings of fact, reviewing courts have no way to discern whether such evidence was overlooked

---

[3]   "The grids consist of a matrix of four factors—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000).  Claimants, like Plaintiff, who are classified as "closely approaching advanced age" are "deemed to be disabled" pursuant to the grids when they have a "limited education, unskilled previous work experience," and can only perform sedentary work. *Kumanchik v. Astrue*, 2012 WL 875448, at *2 (W.D. Pa. Mar. 14, 2012).

or ignored, so remand is generally appropriate. *Carter v. Apfel*, 220 F. Supp. 2d 393, 396 (M.D. Pa. 2000) (citing *Cotter*, 642 F.2d at 705). The only reason remand would likely *not* be appropriate in that scenario is if the claimant seeking review failed to explain how the neglected evidenced would have "affect[ed] the outcome of the case." *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005).

In this matter, the record contains years of treatment notes from Plaintiff's chiropractor, Dr. Todd McCloy, D.C. (Ex. 3F at R. 260—372; Ex. 10F at R. 1342—1423; Ex. 11F at R. 1424—1425).[4] They document Plaintiff's treatment with Dr. McCloy between 2006 and 2016. These records indicate that in late 2011, Dr. McCloy was seeing Plaintiff regularly and noted his "[s]welling and joint fixation . . . at the right [Sacroiliac] joint." (R. 357). Dr. McCloy treated Plaintiff with "very gentle manip[ulation] procedures," as well as "[d]eep heat infrared and EMS . . . to the lumbar musculature." (R. 357). Stretching was also employed to address Plaintiff's hamstrings and piriformis muscles, and he was prescribed home stretches. (R. 357).

Treatment notes from 2012 indicate Dr. McCloy observed "diffuse TL paraspinal spasms," "[a]ctive trigger points" in Plaintiff's gluteal and piriformis muscles, restricted "[f]orward flexion, extension, [and] left lateral flexion of the L-spine." (R. 354). That same instance of treatment revealed "tightness in both hamstring muscles." (R. 354). Dr. McCloy's treatment notes a year later indicated continued spasms, as well as "[s]welling and joint fixation .

---

[4] Though chiropractors are not "acceptable medical sources," their treatment is relevant to the question of impairment severity and functional limitations. SSR 06-03P, 2006 WL 2329939, *2—3 (S.S.A. Aug. 9, 2006) (explaining that evidence provided by these other sources is "important and should be evaluated on key issues such as impairment severity and functional effects"); *McBee v. Colvin*, No. CV 15-263-J, 2017 WL 1101884, at *1 n.1 (W.D. Pa. Mar. 23, 2017) (explaining that SSR 06-3P illuminates how ALJs should consider evidence from medical providers who are not acceptable medical sources).

. . at the left SI joint." (R. 335). Dr. McCloy observed "swelling across the sacral base," "tightness bilaterally in the hamstring muscles," and pain-related restriction in "[f]orward flexion, extension, [and] left lateral flexion." (R. 335). At that time, Dr. McCloy opined that Plaintiff suffered from "obvious permanent physical impairment." (R. 335). One year later, in March 2014, Dr. McCloy observed Plaintiff to be "restricted in all plains of motion with assoc[iated] pain," found "swelling across the sacral base" and continued "[s]welling and joint fixation . . . at the left SI joint," and noted "TL spasms." (R. 316). At that time, Dr. McCloy discussed a "multi-disciplinary" plan of care that involved continuation of "conservative treatment," "weight loss," and an "increase [in] physical activity." (R. 316). All this was designed to address "aspects of [Plaintiff's] permanent physical impairment." (R. 316).

Dr. McCloy's treatment notes address time outside the relevant time period, *i.e.*, the time between Plaintiff's alleged onset date and date last insured,[5] but also include treatment notes for every month that falls within that period. (R. 301—72). These records are probative of the severity of Plaintiff's back pain and related symptoms during that time, and they were timely submitted to the ALJ for his consideration. (R. 25, 26, 32). Pursuant to 20 C.F.R. § 404.1545(a)(1), they ought to have been considered toward the RFC determination. However, the ALJ's decision lacks reference to these records. The Court finds that oversight problematic. *See Cotter*, 642 F.2d at 705.

Defendant argues that many of the McCloy treatment notes are from "after Plaintiff's date last insured." (Doc. No. 18, pg. 12). However, as explained above, there is a significant

---

[5] *See Matullo v. Bowen*, 926 F.2d 240, 244 (3d Cir. 1990)*; Roberts v. Astrue*, No. 02:08-CV-0625, 2009 WL 3183084, at *4 (W.D. Pa. Sept. 30, 2009) (citing *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 201 (3d Cir. 2008)) ("Indeed, for purposes of qualifying for DIB under Title II of the Act, a claimant must show that he or she was disabled between the alleged disability onset date and the date of last insured.").

cache of McCloy treatment notes in the record that are from the time period relevant to Plaintiff's disability determination. Defendant also argues that the ALJ's failure to address those treatment notes is not an error that requires remand because Plaintiff has not demonstrated how consideration of those records would have impacted the outcome. (Doc. No. 18, pg. 12). While the Court is not required to order remand "in quest of a perfect opinion" the harmless error doctrine is one that the Court employs cautiously when reviewing the Commissioner's final decisions. *Hayes v. Berryhill*, No. 3:17-CV-00648, 2018 WL 3596858, at *7 (M.D. Pa. June 20, 2018), report and recommendation adopted, No. 3:17-CV-648, 2018 WL 3584698 (M.D. Pa. July 26, 2018) (citing *Moua v. Colvin*, 541 F. App'x 794, 798 (10th Cir. 2013)).

In this matter, the Court cannot be certain that the omission of the McCloy records from the ALJ's decision had no impact on the outcome. The ALJ appears to have implicitly rejected relevant medical evidence of Plaintiff's back pain and related symptoms after finding that Plaintiff's own representation of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (R. 20). Rather than review the McCloy records itself to determine whether they support further functional limitations arising from Plaintiff's back impairment, the Court will remand for the Commissioner's consideration of that evidence in the first instance. *See Cotter*, 642 F.2d at 705 (citing *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979)) (explaining that courts cannot fulfill their reviewing function unless the final decision includes an explanation of the value afforded "obviously probative exhibits"). By remanding this matter for further consideration, the Court in no way implies what result will come of the ALJ's further examination of the case as informed by the McCloy records.[6]

---

[6] Plaintiff also argues that the ALJ mischaracterized certain evidence, particularly Plaintiff's treatment history with Dr. Rai. Plaintiff argues he started treatment with Dr. Rai earlier than the ALJ gave him credit for and continued treatment beyond the date the ALJ found

V.   **Conclusion**

For the foregoing reasons, the Court finds the ALJ's decision is not supported by substantial evidence. Accordingly, the Court hereby remands this matter to the Commissioner for reconsideration consistent with this Order.

s/ Alan N. Bloch<br>United States District Judge

ecf:   Counsel of record

---

he ceased treatment with Dr. Rai. (Doc. No. 15, pgs. 3—4). It appears Dr. Rai did in fact treat Plaintiff earlier and later than the ALJ's description of that history might suggest. (R. 20, 1313, 1338). However, because the Court is remanding this matter for further consideration, it need not address Plaintiff's argument that any such error would also require remand. On remand, the Court urges clarity such that any ambiguity in the ALJ's description of Dr. Rai's treatment of Plaintiff is resolved. *See Cotter*, 642 F.2d at 704–05 (emphasizing the importance of clarity).

To the extent Plaintiff argues "[t]he ALJ also did not discuss any of the treatment notes of the VA Medical Centers" (Doc. No. 15, pg. 7), that argument is contradicted by the ALJ's decision. The ALJ did address Plaintiff's VA medical records, though he focused, to a greater extent, on those records as they related to Plaintiff's shoulder impairment, mental health impairments, hypertension, sleep apnea, and obesity. (R. 20). Many of the VA records Plaintiff alleges were overlooked as they related to his back impairment are records from after the date last insured. (Doc. No. 15, pgs. 7—8). The Court's remand order is broad enough to encompass further consideration of the VA records insofar as Plaintiff might argue those records reflect the extent of his functional limitations during the relevant time period.